# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
information about the location of the cellular telephone assigned call number (262) 894-6701

Case No. 26-1853M(NJ)

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ________ District of ________
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 11/13/2026 *(not to exceed 14 days)*

❒ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Hon. Nancy Joseph, U.S. Magistrate Judge.
*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❒ for ____ days *(not to exceed 30)* ❒ until, the facts justifying, the later specific date of ________.

Date and time issued: 10/30/2026

*Judge's signature*

City and state: Milwaukee, Wisconsin

Hon. Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ____________________

_______________________________________
*Executing officer's signature*

_______________________________________
*Printed name and title*

## <u>ATTACHMENT A</u>

**Property to Be Searched**

1. Records and information associated with the cellular device 262-894-6701 (referred to herein and in Attachment B as “the Target Cell Phone”), with listed subscriber(s) **Ambrocio Segundo-Perez** that is in the custody or control of Maria Guadelupe Flores-Cedillo (referred to herein and in Attachment B as the “Provider”), a wireless communications service provider that is headquartered at **T-Mobile.**

2. The Target Cell Phone.

## ATTACHMENT B

**Particular Things to be Seized**

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received)

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days, from the date of this warrant, including:

    i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

    ii. Source and destination telephone numbers;

    iii. Date, time, and duration of communication; and

    iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT")].

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

    i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by

the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**Information to be Seized by the Government**

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) and 1324(a)(1)(A)(v)(II) (Conspiracy to Transport or Harbor an Illegal Alien and Aiding and Abetting the same) involving Maria Guadelupe Flores-Cedillo during the period .

All information described above in Section I that will assist in locating Maria Guadelupe Flores-Cedillo, who was charged with violating Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) and 1324(a)(1)(A)(v)(II) (Conspiracy to Transport or Harbor an Illegal Alien and Aiding and Abetting the same) on October 28, 2026, is the subject of a federal summons issued on October 28, 2026, and whose Target Cell Phone is the subject a federal search and seizure warrant.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

information about the location of the cellular telephone assigned call number (262) 894-6701

Case No. 26-1853M(NJ)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the Eastern District of Wisconsin, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 8 U.S.C. 1324(a)(1)(A)(v)(I) & (II) | Conspiracy and Aiding and Abetting the transport and harboring of an illegal alien |

The application is based on these facts:

See the attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of ______ days *(give exact ending date if more than 30 days:* ____________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

IAN J HOUSE Digitally signed by IAN J HOUSE Date: 2026.10.30 09:49:30 -05'00'

*Applicant's signature*

Ian House, Special Agent (HSI)

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 10/30/2026

Nancy Joseph

*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Ian House, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **262-894-6701** (the "Target Cell Phone"), whose service provider is T-Mobile ("Service Provider") a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey**.** The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone.

3. I am a Special Agent with Homeland Security Investigations and have been since 2008. Homeland Security Investigations (HSI), under Immigration and Customs Enforcement (ICE), comprised of the former United States Immigration and Naturalization Service (INS) and United States Customs Service.

4. I am currently assigned to the HSI Office of the Resident Agent in Charge (RAC) in Milwaukee, Wisconsin. As a Special Agent with HSI, I am authorized to investigate violations of the criminal and administrative laws of the United States, and as a law enforcement officer for the United States, I am empowered by law to conduct investigations of, and to make arrests for, federal offenses.

5. Since 2011, I have worked with the Greater Milwaukee Human Trafficking Task Force and the Wisconsin Anti-Human Trafficking Task Force since 2022. In my current employment, I am assigned to investigate alleged violations of the Immigration and Nationality Act (INA) and human trafficking offenses. This includes the enforcement of laws prohibiting human trafficking, human smuggling, conducting immoral acts across state boundaries, narcotics distribution, and money laundering.

6. I have received training on sex crimes, human trafficking, narcotics investigations, money laundering, financial investigations, and various other violations of federal law that fall under the purview of HSI. I have participated in numerous investigations involving violations of state and federal laws. I have participated in, authored, or assisted in numerous federal search warrants for narcotics, firearm, and human trafficking related offenses that have resulted in the seizure of controlled substances, firearms, and United States currency from individuals involved in trafficking.

7. I have debriefed multiple defendants, informants, and witnesses who had personal knowledge regarding major trafficking organizations. I am familiar with the ways in which traffickers conduct their unlawful trafficking activity, including, but not limited to, their methods used to distribute, transport, store, and import subjects or products, their use of code words and numbers to conduct their transactions, their methods for concealing and safeguarding products and proceeds, their methods used to launder proceeds, and their use of violence and

threats of violence to protect their organization. I have also conducted physical and electronic surveillance and analyzed electronic evidence. I am familiar with traffickers' methods of operation including communications via Facebook messenger, electronic telephone/smart phone applications, text messaging services, and other traditional forms of communications. I know that individuals involved in trafficking operate vehicles in facilitation of trafficking activities, and I know that monitoring of such vehicles has resulted in identification of co-conspirators, patterns of travel, and relevant locations to include storage and distribution locations

8. The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9. Based on the facts set forth in this affidavit, there is probable cause to believe that Maria Guadelupe Flores-Cedillo has violated Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) and 1324(a)(1)(A)(v)(II) (Conspiracy to Transport or Harbor an Illegal Alien and Aiding and Abetting the same). Maria Guadelupe Flores-Cedillo was charged with these crimes on October 27, 2026, in the District of New Mexico, and is the subject of a criminal complaint and summons on the same date, and the location information described in Attachment B will assist law enforcement in serving a summons to Maria Guadelupe Flores-Cedillo. In addition, on October 28, 2026, Magistrate Judge Nancy Joseph signed a search warrant for Flores-Cedillo's cellphone that is assigned phone number 262-894-6701, which is the Target Cell Phone for this application.

10. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court

of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

11. On September 30, 2026, HSI Special Agents conducted Unaccompanied Alien Child (UAC) interviews with two minor children of Ambrocio Segundo-Perez and Maria Guadalupe Flores-Cedillo. The two minors were apprehended near Deming, New Mexico, as part of a group of seven illegal aliens who were being smuggled into and whose presence was being furthered within the United States on or about September 30, 2026. The UACs are Mexican citizens with no lawful mean of being present in the United States.

12. During the interviews, both minors provided agents with contact information for their mother, Maria Guadalupe Flores-Cedillo, and their father, Ambrocio Segundo-Perez. The minors identified telephone number 262-894-6701 as belonging to Flores-Cedillo and telephone number 414-659-0480 as belonging to Segundo-Perez.

13. During the UAC interview, Unaccompanied Alien Child One (hereafter identified as UAC1), who was approximately nine years old, stated that UAC1 and his younger sibling (hereafter identified as UAC2, was approximately four years old) had been away from Puebla, Mexico, for approximately three weeks. UAC1 stated that their uncle, Alejandro Perez, arranged for their air travel from Puebla, Mexico, to Juarez, Mexico. Upon arriving in Juarez, Alejandro Perez returned by air, and the minors were turned over to an individual known as "COCHO," whom UAC1 identified as the "pollero," a common term for a human smuggler. UAC1 stated that his mother and father utilized their cellular phones to contact the smugglers, or "polleros," to transport them to the United States.

14. UAC1 stated that he and UAC2 traveled by vehicle from Juarez to Puerto Palomas, Mexico, where they stayed at a stash house before crossing into the United States.

UAC1 described crossing through mud and climbing over a wall. After crossing the wall, UAC1 stated that a white truck was waiting for them. UAC1 further stated that COCHO told the minors their parents would pay $8,000 for each child, for a total smuggling fee of $16,000.

15. On September 30, 2026, HSI Special Agents contacted the individual using telephone number 262-894-6701, which was obtained from UAC1's cellphone and is the number assigned to the Target Cell Phone. The individual identified herself as Maria Guadalupe Flores-Cedillo, the mother of the two UACs in HSI custody. Flores-Cedillo stated that she and her husband, Ambrocio Segundo-Perez, hired a "pollero", to facilitate the smuggling and illegal entry of their two minor children into the United States. Flores-Cedillo said her current address is in Milwaukee, Wisconsin.

16. On October 21, 2026, HSI Milwaukee conducted a post-Miranda interview with Ambrocio Segundo-Perez. During the interview, Segundo- Perez stated that he had made financial arrangements with a human smuggler in Mexico by the name of "COCHO" for the transportation of his two minor children from Mexico into the United States in approximately July and August 2026. Segundo- Perez stated he made money transactions in thousand dollar increments to the smugglers. He mentioned he would pay $1,000.00, $2,000.00, or $3,000.00 in a single transaction from a "bank" in Milwaukee to the human smugglers in Mexico. Segundo-Perez provided consent to the agents to search the contents of his phone. Segundo- Perez provided agents with the phone number for one of the human smugglers in Mexico named "Rolando" that he was in direct communication with to coordinate the delivery of his two minor children. Segundo-Perez's phone also showed that Flores-Cedillo's phone number to be 262-894-6701, under the contact name "Mi Amor," which translated into English means "my love."

17. Records checks revealed that both telephone numbers 262-894-6701 and 414-896-0480 were associated with Ambrocio Segundo- Perez at his address in Milwaukee,

Wisconsin. Both telephone numbers were queried through law enforcement databases. The results showed that telephone number 262-894-6701 was used to conduct 10 wire-transfer transactions between August 2025 and August 2026. The 10 transactions listed the sender as Maria Guadalupe Flores-Cedillo totaling $13,659 USD, and were sent to six different individuals in Puebla, Mexico. The results also showed that telephone number 414-659-0480 was used to conduct 39 wire-transfer transactions between January 3, 2024, and September 28, 2026. All 39 transactions display the name Ambrocio Segundo-Perez with his address in Milwaukee, Wisconsin.

18. The transaction dated July 23, 2026, prior to the delivery of the children to "COCHO" to be smuggled, identified Maria Guadalupe Flores-Cedillo as the sender of $2,000 to a "Yazmin Segundo-Aguilar," in Atlixco, Puebla, Mexico. This transaction used the cellular telephone number of 262-894-6701. This specific transaction amount was referenced in the statement made by Segundo-Perez (as described in paragraph 17 of this affidavit) as an amount sent to the smugglers. This specific transaction also does not appear to be similar to her other transactions, because the one she sent on July 23, 2026, was an even dollar amount of exactly $2,000.00, where the other transactions from Flores-Cedillo were uneven amounts to the other individuals. This specific transaction is the only one that Flores-Cedillo sent that was to "Yazmin Segundo-Aguilar." This specific transaction was also sent through Western Union, which was the sole instance of utilizing this different money remitter compared to the other transactions since August 2025. In contrast, Ambrocio Segfundo-Perez was not observed to be sending even dollar amounts to persons outside of the United States during the same time period.

19. Queries of cellphone toll information for the phone number 262-894-6701 showed that Maria Flores Cedillo was on a phone call with the Mexican phone number +522441103725 during and after this transaction. Based on my training and experience, I know

that people sending money internationally through money service remitters will often remain on the phone with the recipient in order to confirm the transaction was completed and the money was received. In addition, based on my training and experience, I know that people engaged in a conspiracy often use text messages and other messaging services on their cellular devices to communicate with co-conspirators regarding their criminal activity and that evidence is maintained within the contents of the cellular devices. Based on the foregoing, there is probable cause to believe that Maria Guadelupe Flores-Cedillo conspired with others, including Ambrocio Segundo-Flores and "Yazmin Segundo-Aguilar," to smuggle UAC1 and UAC2 into the United States and that Maria Guadelupe Flores-Cedillo's cellular device may hold more evidence of the crime, including but not limited to communications regarding logistics, travel arrangements, and payments.

20. On October 27, 2026, Chief Magistrate Judge Gregory Wormuth in the District of New Mexico signed a criminal complaint charging Maria Guadalupe Flores-Cedillo and Ambrocio Segundo-Perez with conspiracy to transport or harbor illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). Magistrate Judge Wormuth issued an arrest warrant for Segundo-Perez and a summons for Flores-Cedillo.

21. On October 28, 2026, I received the criminal complaint and summons issued from the District of New Mexico, summoning Maria Guadelupe Flores-Cedillo to appear before the United States District Court in the District of New Mexico. I also received a federal search warrant signed by Magistrate Judge Nancy Joseph from the Eastern District of Wisconsin to search and seize Maria Guadelupe Flores-Cedillo's cellular device, which is the Target Cell Phone.

22. On October 29, 2026, I attempted to serve the summons on Maria Guadelupe Flores-Cedillo and execute the federal search warrant for her cellular device at her residence. I

was able to observe someone in her residence through a window, but no one answered the door after repeatedly knocking on the door after 20 minutes. Other law enforcement agents observed a Hispanic female loading several items into a vehicle parked nearby and entered the rear door. I and other agents also repeatedly knocked at the rear door for several minutes with no answer. I discovered that her husband's family members reside in the upper portion of the residence. I was able to make contact with Maria Guadelupe Flores-Cedillo through translating texts messages. Flores-Cedillo claimed to not be in the residence. However, I am aware that she only resided with her husband, who is in ICE custody, and her 8-month-old child. I made further attempts to schedule a time and place to meet her to serve the summons and seize her cellular device, but she then stopped responding to text messages.

23. Also on October 29, 2026, another law enforcement agent contacted a Spanish speaking ICE officer, who was able to make phone contact with Maria Guadelupe Flores-Cedillo on the Target Cell Phone. Flores-Cedillo said that she was not at home, and she claimed she had retained a lawyer. I called the person who Flores-Cedillo purported to be her lawyer, and I was connected instead to a personal trainer in Chicago, Illinois.

24. On that same day, October 29, 2026, I contacted HSI agents in Deming, New Mexico, and updated them about the events that occurred that day and my attempts to serve the summons and execute the search warrant of the Target Cell Phone. One of the agents in Deming, New Mexico, who had spoken with the UACs and Flores-Cedillo previously, was able to speak with Flores-Cedillo and explained to her why agents in Milwaukee were trying to contact her. He explained to her that agents were not at her residence to arrest her, but Flores-Cedillo was not amendable to being served with the summons or to relinquish her phone when advised.

25. Based on my training and experience, along with my observations and attempts to serve the summons and execute the search and seizure of the Target Cell Phone on October 29, 2026, Flores-Cedillo may attempt to go to an unknown location to evade being served the summons and allow for the execution of the search warrant for her cellphone. Despite being told that law enforcement was not there to arrest her, she has failed to allow herself to be served with the summons and is not willing to relinquish the Target Cell Phone.

## TECHNICAL BACKGROUND

26. In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

### Cell-Site Data

27. Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone

numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

**E-911 Phase II / GPS Location Data**

28. I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device’s signal using data from several of the provider’s cell towers. As discussed above, cell-site data identifies the “cell towers” (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the “sector” (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider’s network or with such other reference points as may be reasonably available.

## Pen-Trap Data

29. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

## Subscriber Information

30. Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retrain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes

under investigation because the information can be used to identify the Target Cell Phone's user or users, the locations of that user or users, and the patterns of that user or users.

## AUTHORIZATION REQUEST

31. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

32. I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

33. I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

34. Because the warrant will be served on the Service Provider, who will the compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

## ATTACHMENT A

**Property to Be Searched**

1. Records and information associated with the cellular device 262-894-6701 (referred to herein and in Attachment B as "the Target Cell Phone"), with listed subscriber(s) **Ambrocio Segundo-Perez** that is in the custody or control of Maria Guadelupe Flores-Cedillo (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at **T-Mobile.**

2. The Target Cell Phone.

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received)

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days, from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT")].

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by

the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**Information to be Seized by the Government**

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) and 1324(a)(1)(A)(v)(II) (Conspiracy to Transport or Harbor an Illegal Alien and Aiding and Abetting the same) involving Maria Guadelupe Flores-Cedillo during the period .

All information described above in Section I that will assist in locating Maria Guadelupe Flores-Cedillo, who was charged with violating Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) and 1324(a)(1)(A)(v)(II) (Conspiracy to Transport or Harbor an Illegal Alien and Aiding and Abetting the same) on October 28, 2026, is the subject of a federal summons issued on October 28, 2026, and whose Target Cell Phone is the subject a federal search and seizure warrant.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.